# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

JOSEPH MISER                                                                          PLAINTIFF

V.                         No. 4:21-CV-977-JM-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                    DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. INTRODUCTION

On May 23, 2019, Joseph Miser applied for disability benefits, alleging disability beginning December 10, 2018. (Tr. at 12). His claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing on October 5, 2020, an Administrative Law Judge ("ALJ") denied Miser's application in an

opinion dated January 14, 2021. (Tr. at 24). Following the ALJ's order, Miser sought review from the Appeals Council, which denied his request for review. (Tr. at 1). Miser seeks judicial review of the ALJ's decision, which now stands as the Commissioner's final decision.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II.  THE COMMISSIONER'S DECISION

The ALJ found that Miser had not engaged in substantial gainful activity since the alleged onset date of December 10, 2018. (Tr. at 15). At Step Two of the familiar five-step analysis,[1] the ALJ found that Miser had the following severe impairments: sequelae of motor vehicle accident with fractures of the left upper extremity and bilateral lower extremities status post surgical repair. *Id*.

After finding Miser's impairments did not meet or equal a listed impairment, the ALJ determined that he had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that he could occasionally climb and balance when walking on narrow, slippery, or uneven surfaces. (Tr. at 16–17).

---

[1] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that Miser's RFC would allow him to perform jobs that exist in significant numbers in the national economy, including sorter, assembler, and order clerk. (Tr. at 23–24). The ALJ therefore concluded that Miser was not disabled. (Tr. at 24).

### III.  DISCUSSION

#### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable

3

mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Miser's Arguments on Appeal

Miser argues that the ALJ's decision is not supported by substantial evidence. He argues that the ALJ erred by: (1) failing to consider a potential closed period of disability; (2) failing to properly evaluate the medical opinions of record; (3) failing to develop the record; (4) discounting the credibility of Miser's subjective complaints of pain; (5) failing to account for all of Miser's limitations in his RFC; and (6) failing to apply the correct standard of proof. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

### Claim 1: Closed Period of Disability

Miser was in a motor vehicle accident on December 17, 2018 that resulted in multiple fractures to both of his feet and his left arm. (Tr. at 18). He underwent surgeries on all three extremities and tolerated the procedures well. *Id*. By April 9, 2019, the fracture in Miser's right foot was healed and his left arm was free of

significant pain. (Tr. at 577). However, the surgical wound on his left foot was slow to heal, and in February 2019 he was hospitalized for treatment of cellulitis/abscess involving his left foot. (Tr. at 1203).

By May 9, 2019, his left foot was still swelling and sore, but the wound was mostly healed. (Tr. at 582–83). Miser's x-rays showed that his fractures were also healing, though one of the screws had broken. (Tr. at 1146–47). Miser's orthopedic specialist, Jared Wilson, PA, advised him to begin bearing more weight in the left walking boot, to elevate his foot, and to follow up in four weeks. Later that month, Miser re-injured his foot after taking off his walking boot to walk in a creek. (Tr. at 854).

By July 2019, he reported that he was "getting around better." (Tr. at 1149). Imaging showed two broken screws in his left foot, but Mr. Wilson said further surgery was unnecessary "unless the hardware becomes a problem." (Tr. at 1153). He advised that Miser could progress with activities as tolerated and follow up in two months.

On August 30, 2019, Miser was still having pain and swelling about his left foot, but his fractures were stable with healing present. (Tr. at 1155–58). Mr. Wilson wrote that Miser was "still having quite a bit of difficulty with his left foot" and surmised that it would "be difficult for him to work due to his left foot for quite some time." (Tr. at 1159). That day, Miser's orthopedic surgeon, Dr. Christopher Young,

filled out a functional assessment form. (Tr. at 1113–14). He opined that Miser could not stand or walk for more than ten minutes at a time or one hour total per workday. He endorsed symptoms sufficient to constantly interfere with attention and concentration, a need for several unscheduled breaks per day, and likely absence from work 3–4 times per month as a result of his impairments.

By Miser's next appointment on September 27, 2019, though, he was "getting around with [his] boot fairly well." (Tr. at 1406). His fractures were stable and healing. (Tr. at 1409). He expressed concern about a screw poking out. Mr. Wilson noted a "prominent area" in the foot, but it didn't match where the hardware was located. *Id*. New imaging showed that the hardware was stable, and Mr. Wilson believed that the prominent area was not a screw. *Id*. On October 23, 2019, he noted that swelling had improved. (Tr. at 111).

Miser says that the medical evidence shows he was unable to engage in substantial gainful activity for at least one year between December 2018 and December 2019. *See* 42 U.S.C. § 423(d)(1)(A) (condition must last, or be expected to last, for continuous 12-month period to meet definition of "disability"). Therefore, he argues, the ALJ should have considered whether he qualified for a "closed period" of disability during that time. But the evidence of record does not support his allegations. As the ALJ noted, Miser's left foot symptoms "appear to have been brought under reasonably good control with the walking boot within 12 months of

the alleged onset date." (Tr. at 20). In addition to citing the clinical note of September 27 that Miser was getting around well with the walking boot, the ALJ also noted that the evidence "does not otherwise reflect non-healing fracture, gait abnormality, or use or need of an ambulatory assistive device by" that date. *Id*. Miser bears the burden of proving disability and providing medical evidence of the severity of his impairment. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). He has failed to establish that he was incapable of performing any work until December 17, 2019. Substantial evidence supports the ALJ's conclusion that Miser's symptoms were under good control with the walking boot by September 2019. Accordingly, the ALJ was not required to find Miser entitled to a closed period of disability.

### Claim 2: Medical Opinions

Miser asserts that the ALJ failed to adequately explain how he evaluated the medical opinions of record. Miser applied for benefits in 2019, so the ALJ's evaluation is governed by 20 C.F.R. § 404.1520c and § 416.920c, which apply to all claims filed after March 27, 2017.[2] Under those regulations, an ALJ focuses on the

---

[2] For claims filed before that date, the evaluation is governed by 20 C.F.R. §§ 404.1527, 416.927. Those regulations generally gave more weight to medical opinions from treating sources than the newer regulations do. Miser challenges the agency's authority to abolish the "treating source rule" because it was created by federal case law before it was adopted into the regulations. This argument is unavailing. Congress has granted the Commissioner "exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act." *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) (quotation omitted). The Act authorizes the Commissioner to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to

persuasiveness of a given medical opinion in light of several considerations, including: (1) how well the source supports the opinion with relevant objective medical evidence and supporting explanations; (2) the consistency of the opinion with other evidence in the record; (3) the source's relationship with the claimant; (4) the source's specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ will articulate how he or she considered those factors in the evaluation. *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ adequately explained his decision to reject opinions from Miser's treatment providers. The ALJ explained that Dr. Young's August 30, 2019 opinion was not well-supported because Dr. Young "did not adequately explain the bases for the limitations in terms of specific medical findings." (Tr. at 22). He found the opinion was also inconsistent with evidence showing that in September 2019, Miser was functioning fairly well in relation to his left foot while his other upper and lower

---

establish the right to benefits" in disability cases. 42 U.S.C. § 405(a). The Court defers to the SSA's interpretation of this change in agency policy. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 865–66 (1984) (holding if a statute is ambiguous and agency's construction is reasonable, deference requires federal courts to accept agency's construction); *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982–83 (2005) (judicial precedent does not displace a conflicting agency construction of a statute unless prior court decision held that the statute unambiguously forecloses the agency's interpretation). As the Eighth Circuit has recently acknowledged, "the now-defunct treating physician rule . . . no longer applies" to new claims of disability. *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022).

extremity fractures showed routine healing. *Id*. These findings are supported by the record and satisfy the articulation requirement set forth in the regulations.

The ALJ also dismissed Mr. Wilson's statement that it would be difficult for Miser to return to work for some time due to his "severe injury" and lingering "difficulty with his left foot." (Tr. at 19, 1159). Miser characterizes this statement as an opinion, but "[m]ere diagnostic statements or 'judgments about the nature and severity of . . . impairments' are not 'medical opinions,' and, therefore, not subject to" the regulations governing medical opinions. *Austin*, 52 F.4th at 728 n.3 (internal citation omitted).[3] The ALJ nevertheless noted that the statement was vague, conclusory, and failed to assess any specific limitations. (Tr. at 19). Accordingly, the ALJ found it unpersuasive. This finding is adequately explained and supported by the record.

The ALJ also complied with the articulation requirements for each of the prior administrative findings from state agency medical consultants. The ALJ found that the initial evaluation conducted by Alice Davidson, M.D. on July 14, 2019 was unpersuasive. (Tr. at 21). Dr. Davidson had projected that Miser would be able to perform light work by December 9, 2019. (Tr. at 162). But the ALJ found that subsequent evidence, including an assessment by Dr. Rosey Seguin-Calderon at the

---

[3] Moreover, whether a claimant is unable to work is an issue reserved to the Commissioner and statements to that effect are inherently neither valuable nor persuasive to the disability determination. 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

9

reconsideration level, demonstrated that Miser was more functionally limited than Dr. Davison had assessed. On November 18, 2019, Dr. Seguin-Calderon opined, with the benefit of reviewing additional medical evidence from August-September 2019, that Miser was capable of performing only sedentary work at that time. (Tr. at 176–77). The ALJ found that her opinion was well-supported and consistent with the other evidence, which reflected pain and swelling controlled by a walking boot, the resumption of Miser's ability to ambulate within 12 months of the alleged onset date, and his ability to ambulate without an assistive device. (Tr. at 21). The ALJ adequately explained his reasoning an no error occurred in this regard.

### Claim 3: Failure to Develop the Record

Miser argues that the RFC determination improperly relies on the opinions of non-examining state agency consultants rather than treating physicians. While it is true that the opinions of non-examining physicians, standing alone, do not constitute substantial evidence, the ALJ was entitled to rely on these opinions, in part, in determining Miser's RFC. *Bowers v. Kijakazi*, 40 F.4th 872, 875–76 (8th Cir. 2022). Miser also presses that the ALJ's rejection of his treating source opinions triggered a duty to obtain more information from Miser's treating physicians. But an ALJ is not required to support his RFC assessment with a treating physician's opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Miser has not identified an undeveloped "crucial issue" in this case that would warrant further examination. *See*

*Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). Substantial evidence, including some medical evidence, supports the ALJ's RFC finding. The ALJ was not required to develop the medical evidence any further.

### Claim 4: Subjective Complaints

The ALJ found that Miser's subjective complaints of pain were not completely consistent with the evidence of record. Miser argues that the ALJ did not conduct a proper analysis in coming to this conclusion.

An ALJ's credibility analysis is guided by the *Polaski* factors, which include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). The ALJ need not explicitly discuss each of the *Polaski* factors in the written decision as long as it is clear that they were considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). "Credibility determinations are the province of the ALJ, and as long as good reasons and substantial evidence support the ALJ's evaluation of credibility, we will defer to [the ALJ's] decision." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (internal quotation omitted).

The ALJ considered the *Polaski* factors in his analysis. He found that Miser "engaged in significant daily activities consistent with [his RFC limitations],"

11

including household chores (doing dishes, sweeping, and laundry) and driving. (Tr. at 21). The ALJ's findings are supported by Miser's hearing testimony. (Tr. at 43-44). The ALJ also noted that the record did not reflect clinical reports of any persistent side effects from Miser's prescribed medications. (Tr. at 20–21). The ALJ acknowledged that Miser complained of persistent swelling and pain in his left foot, but found those symptoms were brought under good control by September 2019. (Tr. at 21). This finding is supported by the evidence discussed above and by multiple normal musculoskeletal clinical findings during doctor's appointments in late 2019 and early 2020. (Tr. at 1373–1395, 1401–04). It is also consistent with clinical findings from a follow-up orthopedic appointment on January 16, 2020. (Tr. at 114–118). At that time, Mr. Wilson found that Miser's foot was stable overall and noted only some sensitivity to the top of his foot. He prescribed lidocaine and advised Miser to perform activities as tolerated.

The ALJ conducted a proper credibility analysis. Substantial evidence supports his decision to discount Miser's complaints of disabling pain.

### Claim 5: RFC Limitation

Miser testified at the October 2020 hearing that he still needed to elevate his foot for "hours" every day. (Tr. at 46–47). He faults the ALJ for not including a corresponding limitation in his RFC. Without it, he argues, the RFC finding is not supported by substantial evidence.

12

"An ALJ must include 'only those impairments and limitations he found to be supported by the evidence as a whole in his hypothetical to the vocational expert.'" *Nash v. Comm'r*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011) (ALJ not required to adopt claimant's "unsupported subjective complaints and self-imposed limitations.")). An ALJ must consider all of the relevant evidence, including medical records, medical opinions, physician observations, and a claimant's own description of his limitations in formulating the RFC. *Hensley*, 829 F.3d at 932.

To support this argument, Miser points to his own hearing testimony and the May 2019 note from his orthopedist about elevating his foot. (Tr. at 1147). This note does not carry the day, though. Two months after the note was written, the orthopedist advised Miser to progress with activities as tolerated. (Tr. at 1153). Miser does not point to any other evidence to support this limitation. The record evidence, as described herein, supports the ALJ's exclusion of this limitation. Substantial evidence supports the RFC finding.

**Claim 6: Burden of Proof**

Miser asserts that the ALJ applied an incorrect standard of proof, but he offers no evidence to support this assertion. The Court presumes the ALJ properly discharged his duties and applied the proper standards in evaluating Miser's claims. *See Wilburn v. Astrue*, 626 F.3d 999, 1003–04 (8th Cir. 2010) (explaining that, in

13

the absence of clear evidence to the contrary, courts will presume public officers have properly discharged their official duties). The Court therefore finds no error.

The Court finds that Miser's remaining arguments are without merit. It is not the Court's task to re-weigh the evidence and make an independent decision, but rather to determine whether the evidence is adequate to support the decision denying benefits. For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision.

## IV.  CONCLUSION

The ALJ applied proper legal standards in evaluating Miser's claims, and substantial evidence supports the decision to deny benefits. The Court should affirm the decision and enter judgment in favor of the Defendant.

DATED this 20th day of January, 2023.

_____
UNITED STATES MAGISTRATE JUDGE